# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK FORBA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 15-1722** |
| **THOMAS JEFFERSON UNIVERSITY** | : | |
| **HOSPITAL** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                **JULY 8, 2016**

Parties seeking damages in this Court typically proceed to a settlement conference before one of the Court's distinguished and experienced Magistrate Judges to assist them in mediating their dispute before trial. When the parties prudently take advantage of this opportunity and, through the able assistance of the Magistrate Judge, agree to specific terms before the Magistrate Judge subject only to signing a document, we will enforce such an agreement when there are no dispute as to the terms. We cannot allow parties to change their minds after agreement and are obligated to enforce settlement agreements as with any contract. Merely because a former employee has a change of heart after leaving the settlement conference with his former employer does not warrant vacating a contract. In the accompanying Order, we grant the former employer's motion to enforce the settlement agreement reached before Magistrate Judge Heffley.

## I.    Background

Defendant Thomas Jefferson University Hospital ("Hospital") employed Frank Forba for over ten (10) years before dismissing him in 2012. Mr. Forba represented he has suffered from anxiety and depression symptoms since his father's passing almost fifteen years ago. On April 2, 2015, Mr. Forba sued the Hospital alleging retaliation interference under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). On July 16, 2015, Judge Buckwalter entered an

initial scheduling order.[1]  The Clerk of Court randomly reassigned this case to us.  After Mr. Forba confirmed abandoning claims for FMLA interference and declaratory relief,[2] we closed discovery on February 1, 2016, and referred this case to Magistrate Judge Heffley for all settlement purposes.[3] We further directed the parties to file summary judgment motions no later than February 8, 2016. The Hospital timely moved for summary judgment and Mr. Forba decided not to oppose the Hospital's motion. It remained unopposed when the Parties appeared before Judge Heffley on March 8, 2016.[4]

Mr. Forba appeared at the conference.  While he now claims he did not want to settle his case, he also did not oppose the Hospital's extensive motion for summary judgment.  During the conference, Judge Heffley met with each side to discuss the issues and, after discussion back and forth, the parties agreed to settle the matter with the Hospital paying funds to Forba as a full and final discharge and to be released of all claims.  Forba reviewed the settlement terms with his attorney, Raheem Watson.[5]  Additionally, Judge Heffley explained the settlement terms to all parties, including Forba.[6]

Upon being notified of the release, this Court dismissed the action under Local Rule of Civil Procedure 41.1B, on March 8, 2016.[7] Two days later, the Hospital forwarded a settlement agreement to be signed by Forba.  Over a month later, Hospital counsel followed up on the status of the settlement. On April 19, 2016, Forba's counsel told the Hospital of Forba's decision not to sign the settlement agreement.  On May 3, 2016, the Hospital moved to enforce the settlement agreement.[8]  Forba responded only with his own affidavit, in which he explained why he did not sign the agreement.[9]  Forba contends he "did not want to [ ] settle the case for the terms as presented" in the settlement agreement and refused to sign.[10]  He further explains he was

2

confused and anxious at the settlement conference.[11]  We held a hearing on the motion over the course of two days.

At the first day of hearings, Forba repeatedly testified his lawyer Mr. Watson and Judge Heffley spoke with him about the Hospital's offer, but he "was confused" about what exactly was being offered.[12]  This confusion and anxiousness led to him to agree to the settlement terms without fully understanding the terms.[13]  Forba testified he remembered the Hospital made him an offer of settlement at the conference, and it offered to pay him "either 500 or 1000" dollars.[14] But he does not remember accepting the offer because he "was nervous."[15]    Forba never informed Judge Heffley or his attorney he was too nervous to proceed with the settlement.[16] Forba never told anyone, until after the Hospital circulated a draft settlement agreement, he did not want to agree.

Counsel for the Hospital also called Sarah R. Goodman, Esq., an associate at the Pietragallo, Gordon, Alfano, Bosick, & Raspanti law firm, which represents the Hospital.[17]  Ms. Goodman attended the March 8, 2016 settlement conference.[18]  Ms. Goodman testified the parties reached a settlement at the conference which she memorialized in writing and forwarded to Mr. Watson.[19]    Over a month later, after not hearing from Mr. Watson, Ms. Goodman called Mr. Watson to inquire as to the delay.[20]  According to Ms. Goodman, Mr. Watson informed her Forba would not sign the settlement agreement because "he had changed his mind."[21]  Ms. Goodman testified there was no discussion of Forba's anxiety or concern over understanding the terms of the agreement.[22]    Further, she testified Forba did not physically appear to be anxious or concerned at the settlement conference.[23]  Finally, she testified Mr. Watson never informed her the reason Forba refused to execute the settlement agreement was because of his anxiety or

confusion on March 8, 2016.[24]

At the hearing, Counsel for the Hospital called Mr. Watson to testify.  Mr. Watson presented to the Court his concerns about a conflict of interest with his client, to the extent he be made to testify inconsistently with his client's testimony.[25]  We instructed Mr. Watson he may testify so long as he does not reveal attorney-client communications or give conflicting testimony from his client Forba.[26]  With that instruction, the Hospital's counsel questioned Mr. Watson about the public aspects of the settlement conference.  Mr. Watson testified Judge Heffley reviewed the terms with all the parties, including Mr. Forba's release of claims.[27]  After the Hospital's counsel finished, we asked Mr. Watson whether Judge Heffley engaged in a colloquy with the parties on the settlement agreement and whether they understood this agreement would end the litigation. [28]  Mr. Watson testified Judge Heffley did colloquy the parties.[29]

When Mr. Watson finished testifying, we decided to adjourn the hearing so Mr. Forba would be able to address concerns raised by Mr. Watson's testimony.  First, we instructed Mr. Forba to consult with independent counsel concerning the apparent conflict between Mr. Watson's continuing representation of Mr. Forba and his testimony.[30]   We informed Mr. Forba of the importance of consulting independent counsel as a lawyer cannot be a true advocate for his client when his recollection is contradictory to his clients.[31]   We gave Mr. Forba the opportunity to either obtain independent counsel or proceed *pro se*.[32]   Second, we instructed Mr. Forba about waiving the attorney-client privilege and allowing Mr. Watson to testify about conversations between them.[33]   Finally, we advised Forba to consider his continued opposition to the Hospital's motion to enforce.  I then adjourned the hearing to resume on July 7, 2016.[34]

4

We specifically told Mr. Forba of his agenda before the July 7, 2016 hearing.[35]

Shortly before the July 7, 2016 renewed hearing, Mr. Forba hand delivered documents regarding his underlying case against the Hospital, a letter from an attorney concerning possible future steps and a handwritten note of a therapist allegedly treating Mr. Forba for several years but who only reported Mr. Forba's statements to her after our first hearing.

We resumed the hearing on July 7, 2016 by asking Mr. Forba if he was prepared and ready to proceed and wished to introduce additional evidence. We reviewed each agenda item from our May 18, 2016 Order. Mr. Forba confirmed his readiness for the hearing without new counsel and asked for us to admit the records hand delivered to our Chambers but shared with the Hospital's counsel before the hearing. We sustained the Hospital's objections as the documents offered no probative evidence on the only issue regarding whether we should enforce an agreement before Judge Heffley. Mr. Forba closed his case. On rebuttal, the Hospital's counsel recalled Ms. Goodman and Mr. Watson. Counsel introduced the draft settlement agreement into evidence. Both Ms. Goodman and Mr. Watson testified the draft settlement agreement contained the material terms agreed to in front of Judge Heffley at the settlement conference on March 8, 2016. We allowed Mr. Forba to examine witnesses including, advising him at one point of the possible waiver of a privilege when he asked Mr. Watson about a statement Mr. Forba made to Mr. Watson. After our explanation, Mr. Forba withdrew the question as he did not want to waive the attorney client privilege.

## II.   Analysis

With Judge Heffley's considerable aid, the parties agreed to certain terms on March 8, 2016, subject only to signature on an agreement. Strong public policy favors settlements.[36] "The

5

validity and enforceability of settlement agreements is governed by state contract law."[37]   An agreement is valid under Pennsylvania law where "both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced."[38]   "As with any contract, an agreement to settle a lawsuit binds a party if he voluntarily entered into it."[39]   While relevant to our decision, the existence of a signed written agreement is not dispositive.[40]   The relevant inquiry is whether the parties agreed to the essential terms, and if so, the intention to formalize the agreement in a later writing does not preclude enforcement of the agreement.[41]   "A settlement agreement will not be set aside absent a clear showing of fraud, duress, or mutual mistake."[42]   A settlement agreement is valid "even if . . . a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing."[43]

After a hearing, the evidence establishes the parties reached an oral agreement at the settlement conference before Judge Heffley on March 8, 2016. Plaintiff attended the settlement conference with his attorney.[44]   Plaintiff reviewed the settlement terms with his attorney.[45]   Judge Heffley explained the settlement terms to the Plaintiff.[46]   While understanding the terms, and admitting he agreed to the settlement terms, Plaintiff now claims he did not fully understand the matter and Plaintiff refused to sign the settlement documents provided by the Hospital.[47] Plaintiff provides no basis to sign the settlement agreement other then he now changed his mind and attributes his decision to anxiousness and confusion.

After evaluating the credibility of testimony, we find Mr. Forba's explanation to lack credibility.   We do not dispute he suffers under an anxiety disorder or may have been nervous before Judge Heffley.  His underlying lawsuit arose from his medical concerns. [48]   The Hospital

granted several FMLA leaves to address his anxiety concerns.   Mr. Forba, the attorneys and Judge Heffley knew of Mr. Forba's history with anxiety.  He had every opportunity to inform his attorney or Judge Heffley of his inability to understand the proposed terms on March 8, 2016 but chose not to.[49]  He did not do so during the settlement conference, nor did he after the settlement conference when he left the courthouse with his lawyer, and he did not at any point until he received the draft written agreement from his lawyer.[50]  At that point, he realized he did not want to settle this matter for the terms presented.[51]  He believes he is "owed much more than what [the Hospital] has offered me" and wants to "go to trial".[52]  He wants his job back.   He does not address the unopposed motion for summary judgment.

Mr. Forba's continued failure to execute the settlement agreement is unjustified.  Despite his allegations of confusion, Mr. Forba did not inform anyone he was unable to continue with the settlement conference or enter into the settlement agreement.  No one testified he appeared to be anxious or confused about the proceedings or lacked the capacity to enter into an agreement that day.[53]  We recognize a party to a lawsuit—especially those who have never been a party to a prior lawsuit—may be overwhelmed when appearing in court for the first time.  But when a party fails to inform his competent counsel or the judge of his inability to comprehend the settlement terms, we are not free to disregard an agreement without adequate evidence of incompetence or lack of capacity to contract.  After adjourning the hearing to allow Mr. Forba to retain new counsel and obtain any evidence of lack of capacity to contract, we have no evidence upon which to base any finding invalidating an agreement reached before Judge Heffley and confirmed in a colloquy.

We find Mr. Forba's bald allegations of incompetence on one day are not adequate for us

7

to set aside the settlement agreement reached on March 8, 2016. We cannot allow parties to reach settlement agreements and then change their mind with buyer's remorse. We grant the Hospital's motion in the accompanying Order.

---

[1] (ECF Doc. No. 7)

[2] (ECF Doc. No. 11, at ¶ 2)

[3] (*Id.* at ¶ 4.)

[4] (ECF Doc. No. 24-1, at ¶ 3)

[5] (*Id.* at ¶ 5.)

[6] (*Id.* at ¶ 6.)

[7] (ECF Doc. No. 20)

[8] (ECF Doc. Nos. 22) At the May 18, 2016 hearing, Defendant made an oral motion to modify our dismissal order for this court to retain jurisdiction. (N.T. at 5.) We granted the motion, and accordingly have jurisdiction to decide the motion. *Kozierachi v. Perez*, No. 10-7570, 2014 WL 1378268, *2 (E.D. Pa. Apr. 8, 2014).

[9] (ECF Doc. No. 24-1)

[10] (*Id.* at ¶ 8.)

[11] (*Id.* at ¶ 7.)

[12] (N.T. at 39, 47)

[13] (*Id.*)

[14] (*Id.* at 47.)

[15] (*Id.* at 47-48.)

[16] (*Id.* at 48.)

[17] (*Id.* at 7.)

[18] (*Id.*)

[19] (*Id.* at 8.)

[20] (*Id.* at 8-9.)

[21] (*Id.* at 9: 8-9.)

[22] (*Id.* at 11.)

[23] (*Id.*)

[24] (*Id.*)

[25] (*Id.* at 81.)

[26] (*Id.* at 81-82.)

[27] (*Id.* at 89.)

[28] (*Id.* at 89-90.)

[29] (*Id.* at 90.)

[30] (*Id.* at 94.)

[31] (*Id.* at 96.)

[32] (*Id.* at 126.)

[33] (*Id.* at 95.)

[34] (ECF Doc. No. 27, at ¶ 3.)

[35] (*Id.* at ¶ 2.)

[36] *See Kozierachi*, 2014 WL 1378268, at *3 (collecting cases).

[37] *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012) (citing *Am. Eagle outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009)).

[38] *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986).

[39] *Jordan v. Continental Airlines*, No. 94-5098, 1996 WL 571812, *3 (E.D. Pa. Oct. 1, 1996) (citing *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)).

[40] *Shell's Disposal*, 504 F. App'x at 201 (citation omitted).

[41] *Channel Home Ctrs.*, 795 F.2d at 298; *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999).

[42] *Pennsbury Village Associates, LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011) (*citing Rago v. Nace,* 460 A. 2d 337, 339 (Pa. Super. Ct. 1983)).

[43] *Thomas v. Univ. of Pennsylvania*, No. 06-1916, 2007 WL 2891739, *2 (E.D. Pa. Oct. 2, 2007) (citations omitted).

[44] (ECF Doc. No. 24-1, at ¶ 3.)

[45] (*Id.* at ¶ 5.)

[46] (*Id.* at ¶ 6.)

[47] (*Id.* at ¶¶ 7-8.)

[48] (ECF Doc. No. 1, ¶ 7)

[49] *Kelly v. Boeing, Inc.*, 513 F. App'x 131, 133-34 (3d Cir. 2013) (rejecting claim plaintiff lacked capacity to enter into settlement agreement due to confusion).

[50] (ECF Doc. No. 24-1, at ¶ 8)

[51] (*Id.*)

[52] (*Id.* at ¶¶ 9-10.)

[53] *Sobel v. Sobel*, 254 A.2d 649, 651 (1969) (reaffirming "a person's mental capacity is best determined by his spoken words and his conduct, and that the testimony of persons who observed such conduct on the date in question out-ranks testimony as to observations made prior to and subsequent to that date").